**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION**

**UNITED STATES OF AMERICA**                                                               **PLAINTIFF**

        **v.**          **Criminal No. 07-30001-001**

**EUGENE RICHARD EVERMAN**                                                              **DEFENDANT**

**O R D E R**

    On the 15th day of February, 2007, defendant's **Motion To Suppress Statements And Physical Evidence** (document #25) came on for hearing, and from said motion, the response thereto, the evidence adduced at the hearing, and the arguments of counsel, the Court finds and orders as follows:

    1.    Defendant Eugene Richard Everman ("Everman") was arrested by Park Rangers in the Buffalo National River Park on a warrant issued out of the State of Georgia.  After he was handcuffed, and before being given **Miranda** warnings, Everman was asked if he had any weapons.  He told the Park Rangers that he had a gun in his backpack, which was in his pickup truck.  Without a warrant, the Park Rangers then entered the truck and seized a .22 caliber pistol and ammunition.  Everman was subsequently charged in a one-count Indictment with being a felon in possession of a firearm.

    2.    Everman now moves to suppress both his statement to the effect that he had a weapon, and the weapon itself.  He contends that his statement should be suppressed because he had not been given **Miranda** warnings before he was asked about weapons.  He contends that the weapon should be suppressed because it was

obtained in a warrantless search.

The government counters that the question about weapons was authorized pursuant to the public safety exception to **Miranda**, and that the seizure of the weapon was justified because it was found in a search incident to a lawful arrest, and also, a search to which Everman had consented.

3.   The public safety exception to **Miranda** was announced in **New York v. Quarles, 467 U.S. 649 (1984).**  Quarles was fleeing police, who had information that he was armed and had just raped a woman.  When caught -- in a grocery store -- Quarles had a holster but no gun.  Without reciting the **Miranda** warnings, the police officer asked Quarles where the gun was, and Quarles told him. When Quarles challenged this questioning, the Supreme Court said:

> We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination.  We decline to place officers . . . in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.

**467 U.S. at 657-58.**

The Eighth Circuit has held that the public safety exception applies "so long as the questions asked of the suspect are reasonably prompted by a concern for the public safety," and that

-2-

has been treated as including the safety of the officers involved in the situation. **U.S. v. Williams**, **181 F.3d 945, 953 (8th Cir. 1999)**(internal quotation marks omitted).  In **Williams**, the suspect was handcuffed in his apartment and the police had a search warrant. Before beginning to search, Williams was asked whether there was "anything we need to be aware of." Williams told the officers about a gun in the closet.  This question was held not to violate Williams' Fifth Amendment rights because there was a risk that armed individuals could have arrived at the apartment within a short time, or that there might have been weapons in the apartment "that could cause [the officers] harm if they happened upon them unexpectedly or mishandled them in some way."

    The exception has also been held to apply to a question about the location of a weapon asked of a suspect arrested outside his car. **U.S. v. Knox**, **950 F.2d 516 (8th Cir. 1991)**(if an officer who has made an arrest "has reason to believe that his safety or that of others is in danger, he may make a limited search for weapons").

    4.   The relevant testimony which the Court finds credible indicates that Everman's arrest took place in an isolated area of the Buffalo National River Park.  Park Rangers Noel Mays and Eric Oaks came upon an unattended Ford pickup.  It was deer season, and hunting is allowed in the area.  The Rangers got out, looked into the cab to see if there were any hunting rifles, and planned to check hunting licenses if they saw hunters.   While they were

surveying the scene, Everman emerged from the woods on a park trail. He acknowledged that the truck belonged to him, and the Rangers pointed out that the license plate had expired over a year before. Everman offered the explanation that he had just purchased the truck and had not had time to get it licensed.

While they were talking with Everman, a second man, Joseph Hurlburt, emerged from the woods. Because of the expired tag on the truck, the Rangers obtained identification from both men and ran NCIC checks. The check showed that Everman had a parole violation on a vehicular homicide charge, and there was an active warrant for his arrest out of the State of Georgia. Hurlburt also had a criminal history, and had used an alias which also had a criminal history.

The Rangers then separated the two men, arrested Everman, and placed him in handcuffs. During the arrest Ranger Mays inquired of Everman whether he "had any weapons." Everman said that he had a pistol in his backpack in the pickup.

The Court finds that these facts bring the question about weapons within the public safety exception to **Miranda**. The incident occurred in an isolated location and the Rangers had no way of knowing if still more men would emerge from the wooded trail. They knew the two men they were dealing with both had criminal histories and that one was wanted on an active warrant. The men were driving a vehicle with a license plate that was

seriously out of date. While it appears that both Everman and Hurlburt were cooperative, the situation could have turned volatile, and the Rangers had no way of knowing that it would not. The testimony was that the question asked of Everman was whether he "had a weapon," rather than whether he "had a weapon in the truck." All this indicates that the Rangers were carrying out procedures authorized under Supreme Court precedent for their own safety in the situation. The motion to suppress Everman's answer to the question about weapons will, therefore, be denied.

5. The Court also finds that the weapon itself need not be suppressed, because it was located during a search incident to a lawful arrest.

Everman does not challenge the legality of his arrest on the Georgia warrant. In **New York v. Belton**, **453 U.S. 454 (1981),** the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." **Belton** explained that the Court had held in **Chimel v. California**, **395 U.S. 752 (1969),** that

> a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area. Such searches have long been considered valid because of the need to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape and the need to prevent the concealment or destruction of evidence.

**453 U.S. at 457** (internal quotation marks omitted).

In establishing a bright line rule with regard to the search of an automobile whose occupant has been arrested, the Court noted "that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon. . .'." **453 U.S. at 460.**

The Court does not find any basis to disregard these legal principles because Everman was not in the vehicle when he was first noticed by the Park Rangers. Everman acknowledged that the vehicle was his and the Rangers could observe that he had been in the woods without his backpack -- which was still in the vehicle. A reasonable inference can be drawn that Everman had not been away from his vehicle for very long and, indeed, at the hearing, Everman estimated that he had been away from the vehicle only about five minutes. A search incident to arrest is not altered by the fact that the occupant is not in his vehicle when first approached by an officer. **Thornton v. U.S., 541 U.S. 615 (2004).**

Nor is the analysis undermined because it is unlikely that Everman could have actually reached the weapon in the truck after having been arrested and handcuffed. As explained in **Thornton**,

> [t]o be sure, not all contraband in the passenger compartment is likely to be readily accessible to a "recent occupant." It is unlikely in this case that petitioner could have reached under the driver's seat for his gun once he was outside of his automobile. But the firearm and the passenger compartment in general were no more inaccessible than were the contraband and the passenger compartment in *Belton*. The need for a clear

> rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which *Belton* enunciated. Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment.

**Thornton**, **541 U.S. at 622-23.**

For these reasons, the Court finds that the search of Everman's truck fell within the "search incident to a lawful arrest" exception to the warrant requirement.

6.   The Court has also considered, as an alternative proper basis for the search of the truck and seizure of the weapon, the government's contention that Everman consented to the search.

In that regard, both Rangers testified that Ranger Mays asked Everman if it would be okay if he got the pistol, and that Everman agreed.

Everman testified that he could not recall if Ranger Mays asked for permission to search, but that it was possible he did ask.  Hurlburt testified that he was about 15-20 feet away, and heard Ranger Mays ask about weapons, but did not hear any request for consent to go get the weapon out of the truck.  He admitted, however, that there were other things that transpired that he did not hear.

The Court credits the testimony of the Rangers and does not find the testimony of either Everman or Hulburt on the point to be contradictory to theirs.  In light of his criminal history, Everman

-7-

was no stranger to criminal proceedings and the Court considers it likely that he would recall whether he was asked to consent to a search.  If the Rangers were both lying under oath by saying that he had given his consent to the search, the Court has no doubt that Everman would have quickly said so while on the witness stand.  He did not -- but, instead, simply said he did not recall.  Moreover, both Everman and Hurlburt said the Rangers were polite to them and, since Everman had already told the Rangers of the gun in the truck, it is not difficult to believe that Ranger Mays asked Everman if it would be all right for him to go get the gun out of the truck.

Thus, the Court believes that Everman did, in fact, consent to the search of the truck.  Such consent would provide another basis of legality for the search, and the admissibility of the weapon thus obtained.

**IT IS THEREFORE ORDERED** that defendant's **Motion To Suppress Statements And Physical Evidence** (document #25) is **denied**.

**IT IS SO ORDERED**, this 16th day of February, 2007.

                                                     /s/ Jimm Larry Hendren
                                                   **JIMM LARRY HENDREN**
                                                   **UNITED STATES DISTRICT JUDGE**